Case No. 20-1369, Secretary of Labor, Mine Safety and Health Administration, Petitioner v. M-Class Mining, LLC, and Federal Mine Safety and Health Review Commission. Ms. Maltz for the Petitioner, Mr. Chandler for the Respondent, M-Class Mining, LLC. Hi, good morning, Council. Just as a matter of convenience, Judge Henderson has asked me to So, Council, please proceed. Good morning. May it please the Court, I'm Susanna Maltz for the Secretary of Labor. I'd like to reserve two minutes for rebuttal, please. Thank you. Thank you. Section 103K orders give MSHA complete control over a mine in the event of an accident. They're among the agency's most powerful tools because they're used to rescue miners and to its plenary power under Section 103K when it took control of the M-Class No. 1 mine after a miner was diagnosed with carbon monoxide poisoning. Unless the Court prefers otherwise, I'll begin with the mootness issue, and then I'll move to the standard of review issue, and then I'll very briefly touch on our argument that even if the Commission selected the appropriate standard of review, they misapplied it. All right. So, turning to mootness, it's the Secretary's position that this case is moot. The Commission was not able to give M-Class any effective relief when it terminated, or excuse me, when it vacated an already terminated K order. When MSHA terminated that order, M-Class was able to use its air compressor again. When the Commission later vacated that order, there was no material change, and M-Class did not get any additional material benefit. And so, it did. Did it not get the benefit of not having that accident order, right? So, it had, yes. There was no longer a terminated K order on the mine's compliance history. That's right, and furthermore, it got its equipment back. And before that, the order had held all that up, correct? No, Judge. When the order was terminated, it got its equipment back. When the order was later vacated, it had already had its equipment back. No, my point is, when the order issued, it lost control of its equipment, correct? And so, your point now is that the Commission has vacated the order, the case is moot? Our position is that once the order was terminated, the case was moot. Vacature didn't additionally change anything. There's a mine safety retrieval system or data system? Yes. And the Commission's order was not stayed, was it? The vacating order? No. Yeah, and yet the mines, the 103 order is still reported in the data system. Does the Secretary have any expungement procedure? I believe that once the order is vacated, it is expunged from the data system. It's no longer- That doesn't happen with this order, right? We checked and it's still on the data retrieval system. I was under the impression that it has been expunged. There are other terminated orders in the compliance history. And so, if it is there, I'm not sure why. Vacature typically removes those orders from the compliance history. And you have a regulation that says that? No, I just think that that's typical agency practice. Well, based on what? Based on- An oral argument, as I understand it. I understand you're making your best argument, but that's what it is, isn't it? Yes, Your Honor, that is what it is. All right. As far as I know. It is the Secretary's position, though, that removing that order from the compliance history did not actually confer a non-speculative benefit to M-Class. They argue that their reputation would be vindicated should that order be removed from the compliance history. And I have two points in response to that. First, reputation isn't a cognizable interest under the MINE Act. And second, the fact of a terminated K order on a compliance history doesn't suggest wrongdoing. It doesn't suggest that M-Class was responsible for an accident. It only, as the commission says, suggests that something occurred at the mine. And so- So let me ask you just a hypothetical. Suppose a mine operator is closed down when an accident order issues because a doctor said he thought this patient was suffering from carbon dioxide poisoning. All right. And so the inspector operates on that basis. The basis of that information shuts the mine down and months go by. And the mine operator is trying to get his equipment back, trying to get the agency to act, and nothing happens. As I understand the Secretary's position, she can avoid any judicial review by terminating that order, even if, in my hypothetical, it was irrational, or I'll say unreasonable, for the inspector to act on the basis of this information, let's say, two days after he inspected and found no evidence of carbon monoxide poisoning at the mine. So there is no remedy for the mine operator? Well, there's expedited review. The mine operator can seek expedited review. So here we know he sought it, and it was denied, and the equipment was denied, or he was denied access to the equipment for a month. Yes, that's correct. But it is an option to pursue. I'm sorry. Go ahead. Go ahead. It is an option to pursue expedited review, and it's not the Secretary's position that any order after it's terminated is unreviewable. And the agency does need to act reasonably. How would you get review when you're arguing today it's moot because it's been terminated? Well, I do think that it could fall within an exception to mootness, though it's our position that it doesn't hear, which I will get to. Even though subsequent accident orders have been issued against this mine operator? I don't know that I understand the question, Judge. I'm sorry. I thought you were saying it could come under an exception of capable of repetition, yet evading review. Yes, it could. Although we know that subsequent orders have been issued against the operator. Yes, subsequent orders have been issued, and they haven't been challenged, and they've been terminated, which I also think suggests that  it's unclear why this particular order would create a reputational injury. Well, let me just hypothetically say what the operator is concerned about is he's been without his equipment for a month. All right, and it's all well and good, you know, that the order has been terminated and now vacated. But he has no way to get the agency to act because he did seek expedition. Yes, I, the agency must be reasonable in its exercise of its power under Section 103K. I'm sorry, I see I'm over my time. Please continue. The agency needs to be reasonable in its exercise of 103K power. That's what abuse of discretion review requires. If I understand your question correctly, it's, I apologize, I don't know that I understand your question. All right, why don't we hear from counsel? Well, I have two questions. Oh, sorry, sorry, Judge. I have two questions. First of all, what is your position with respect to vacating not only the commission, well, the commission's decision, but also the ALJ's and the order itself? If it's moot. If it's moot, we would ask that this court require the commission to vacate it for, or excuse me, to dismiss the case for lack of jurisdiction. And then that would require, I think, the commission to require the ALJ to dismiss for lack of jurisdiction as well. And then the order would be valid and unchallenged. It would be, well, the order would be vacated. If you can't challenge, we have precedence saying if an administrative agency issues an order and it can't be judicially reviewed because of mootness, the order has to be vacated. I think that here the order would have been terminated already. And so that would, that would resolve this distinction between termination and vacating. I'm just wondering whether we have a case or controversy. You want the order vacated. It seems to me if the case is moot, the order gets vacated and the mine wants the order vacated. And if the case is moot, the order gets vacated. So you both win. We don't want the order vacated. We'd like the order validated. Okay. All right. The next question I have, the last one is, is there any provision or any practice, we're worried about reputational injury, to vacate not, when there's mootness, to vacate not only the commission's decision, but also the ALJs? I think that if the, if the commission's decision is vacated. I don't mean vacate, I'm sorry, expunge. Expunge the commission's decision, expunge the ALJs, because that's public knowledge and anybody reading it would, would think, well, maybe something happened in those. I don't know whether there is, Judge, I'm sorry. Okay. Don't you want to go even, more basic than that, Judge Randolph, to the 103k order itself? Yes, yes, exactly. That's what I was trying to get to. Yeah. So I apologize. I think that the vacature would expunge the order, but vacature would also suggest that the order was invalid as issued. And it's our position that the order was validly issued. And so when an order is validly issued... No, no, no, no, because if we issue an order saying the case is moot, and what the consequences of that would be, anybody who really cared about it would know that the order was vacated, not because it was valid or invalid, but because the case was moot. Well, we wouldn't ask for the order to be vacated. We, our position is that the order is valid and that the proceedings should be dismissed as moot. Okay. All right. Council for Respondent. Morning. May it please the Court. Good morning. Justin Chandler on behalf of Respondent, M-Class Mining, LLC. I want to first briefly touch on the issue of mootness and why we believe this case is not moot. First, I said M-Class has sought vacature of this order. When it's noticed a contest, it sought for the order to be vacated. Then it moved for an expedited hearing, which was denied. So the Secretary's position that this order being terminated somehow renders it moot, we disagree with because termination simply means that the condition no longer exists. Whereas a tour is appropriate remedy for the operator when the order was erroneously issued, which we believe in the commission held that this order was erroneously issued because it was not predicated on the occurrence of an accident. As far as the standard of review. Well, can I just ask you a preliminary question then? As I understand the Secretary's position, she appreciates the fact that initial understandings of a situation can change when the inspector conducts an examination, but that the purpose of the 103-K order is to essentially assert the Secretary's authority for that period of time until the inspection is continued. And, you know, the Secretary knows basically where she is. So why wouldn't we defer to that interpretation of the Secretary's interpretation of her own? Well, two responses to that, Judge Roberts. First would be, we feel like the statutory text in 103-K is clear that an accident must actually occur until the 103-K. And the second, and the commission made this clear in their decision, they weren't trying to limit Imsha's ability to respond to apparent accident situations. Instead, what the commission held was, Imsha's presented with an incident which may be an accident, which Imsha believes warrants a K, go ahead and issue the K order. However, conduct their investigation and that investigation revealed no evidence that an accident actually occurred, the appropriate remedy in that situation is to vacate the order because it was erroneously issued. So that would be my two responses to that. But going back to the standard of review, this kind of ties in as well. Excuse me, Mr. Chandler. What is the standard that the Secretary must follow? You know, I think of the analogy of a search warrant. You don't have to prove that a crime has been committed, just probable cause. And even if a later investigation reveals that the individual is innocent of any offense, it doesn't mean the search warrant was invalid. Isn't that analogy true here? I think I can draw a distinction this way, Judge Randolph, in that in the search warrant example, the warrant itself may be valid, but the person wasn't charged with a crime here in class was publicly on his public record. It indicates that an accident occurred on February 24th, 2018 at the mine. So it did have necessarily penal, but it did have, it wasn't just subject to like the person subject to the search warrant. It was actually subjected to enforcement action as a result of that case. In that portion of the mine was closed for a period of time and its equipment voluntarily removed for over a month. The same thing would happen with a search warrant and items are seized for a month or two months or whatever. Right. Again, but if, you know, if I understand you correctly, I think with the search warrant, if they're not charged with a crime, as opposed to here, where in-class was charged on its record with having an accident occurred at the mine, that's how I would try to distinguish the two. But again, so to the extent you were seeking vacator, and that's what the commission gave you, Judge Randolph has suggested, well, is there even a case of controversy? But of course our orders said address mootness. And my questions basically were focusing on, can the secretary act in a way that basically avoids any judicial review? Well, I think that's what, I think that's what they try to do. The secretary tried to do here, Judge Rogers. I think they tried to avoid review by terminating the order and then move into dismissed on the basis of the termination. However, we feel like the Mine Act provides a further remedy in vacator because it was erroneously issued. Erroneously issued citations and orders under the Mine Act are vacated, not terminated. In fact, many contested citations and orders in the Mine Act are terminated prior to hearing before they're ultimately vacated or sustained by the ALJ. Mr. Chancellor, do you have any injury other than the fact that it's still, whether erroneously or not, on the record, other than the reputational? It doesn't count toward anything in your operating history, does it? That's correct, Judge Henderson, that does not. However, it does remain on the record as an accident occurring, and we believe could be subject to additional enforcement action to be taken against M-Class. As the commission noted, unlikely here because we're three years removed from the incident. A terminated 103 could be later modified, and it could serve as the basis for enforcement action under 104A against the operator. So we think there is harm other than the reputational harm sustained by this order remaining on M-Class's record. Can you give me an example of that? Oh, I'm sorry, go ahead. I'm sorry? What is the collateral effect of this other than, well, reputational? So the order could, although unlikely in this case, because we're three years removed from the incident that brought this case about, it could be later modified. Okay, so a terminated 103K could be modified. So a situation could arise where a retrofit to the compressor, for instance, issue in this case, and you could modify that K and demand that the operator implement the retrofit for carbon monoxide emissions, and the operator may not want to do that. So that's one way they can continue to be harmed. And again, the accident remaining on M-Class's public record isn't just a matter of reputational harm. It could factor into the accident. It's very true. Had it been within the most recent 12 months, however, we're three years from this incident. So that's no longer an issue for M-Class specifically. Well, in this case, correct me if I'm wrong, and I need to be clear on the chronology. After the inspector determined that no accident had occurred as he originally thought based on the doctor's statement, the operator was still required to prepare a plan. And the first plan was not satisfactory. The second plan was not satisfactory. So if in fact, the inspector found there was no accident, then what was the basis for his requiring the operator to come up with these plans? Or is that just a standard operating procedure of any time an inspector looks at a mine, he has the authority or she has the authority to require the operator to provide plans of safe operation? Hi, Judge Rogers. We believe that that was absolutely an unreasonable action by Imch in this situation because the inspector's investigation didn't reveal any evidence of carbon monoxide exposure. So all the evidence that he discovered rebutted what was in that initial escalation report from the doctor. He didn't have any corroborating evidence whatsoever to base the modifications and take the... As a matter of fact, he tested the compressor underground before issuing the modification, taking it out of service. So Imch knew the night after the order was issued or hours after the order was issued that the compressor was not emitting elevated levels of carbon monoxide. They didn't have any reasonable basis to remove the compressor for service. And they certainly didn't have a reasonable basis to keep it out of service for a month. What was the plan? What was the substance of the plan that was required? The substance of the plan, and that can be found, I believe in JA20, excuse me, JA1417. The substance of the plan essentially was Imch was wanting to make M-Class put in additional measures when using their compressor, which either A, they were already required to do so by law or B, in response to this particular event, they didn't know what they could do to prevent reoccurrence because there was no evidence that the event occurred. So the only thing that Imch wanted in the plan was basically what M-Class was already required to do by law. That's officially answers your question. I'm sorry. Thank you. Yes. No. Do my colleagues have anything further? I don't. Anything further council? No, thank you. All right. Let us hear from the secretary. Thank you. Just a few points to make. I want to address the argument that a terminated K order could be modified to impose additional enforcement actions. That's not the case. A terminated K order cannot be modified. The commission suggested that it could and then cited cases that have to do with section 104 citations and orders, which can be modified following termination. Often they're modified in settlement, I think. But a 103 K order, the purpose of the 103 K is to give Imch control over the mine. And so once that order is terminated, that means that there's no longer a need to have control over the mine. And there's nothing further that can be modified. So there's no risk that Imcha would go back and modify this terminated K order. And I think. What is the nature of these plans that were required? You know, I'm not, I think that there was a discussion between the operator and Imcha, you know, on these plans. And I'm under the impression that the operator wanted its equipment back and Imcha was proposing intermediary measures while it conducted an inspection of the equipment. I'm afraid I don't know. But this lasted over a month. Yes, and the inspection of the equipment lasted over a month. It's not the case that Imcha knew immediately that the equipment wasn't emitting carbon monoxide. And I don't know that Imcha ever conclusively. I don't know that Imcha concluded that the equipment certainly wasn't emitting carbon monoxide. That they conducted a thorough investigation. They were under the impression that the air compressor, because it was a diesel powered air compressor, it was likely the source of the carbon monoxide poisoning. And so for a month, they conducted these tests. They did not want to put. And what were the plans? I'm afraid I don't know the details of the plans, Judge. But I think that. I don't need details. But why were the plans required if it was just a matter of Imcha doing the investigation? I think that typically in the context of a 103k order, there is back and forth between the operator and Imcha about intermediary solutions. I think that that's standard. Although I'm afraid I don't know the details. You know this case, right? Yes. What happened here? I'm not clear on what Imcha spoke with the operator about or would have required. But I do know that the operator insisted on having its equipment back. Imcha wasn't willing to release the equipment to the operator. No, I understand all that. But it also, according to the brief, said that the operator submitted one plan that wasn't satisfactory. He submitted another plan that wasn't satisfactory. Yes, I don't know the details of those of those plans. Well, would that affect our analysis of mootness at all? No, I don't think that it would. And then just another point to make. I'm just trying to pressure you so I understand how far the secretary goes on this. Suppose I'm the mine operator and I want my equipment back. And the inspector says, yes, but I need a plan. And the inspector says, I want the plan to have five things in it. And I say, that's going to cost me half a million dollars. Inspector says, I want that plan. And you don't get your equipment back until I get that plan. I just want to understand what's happening in this situation. It may be fine that the inspector needs a month to test the equipment. But it's not the same as requiring the operator to come up with a plan. It's a safety plan? I think that it's an intermediary plan. But we don't know. OK. So all we can do is look at 1417 of the record and see what's there. Yes. Yes. And I apologize about that. And then I just briefly wanted to address the fact that the commission does say, and Mr. Chandler referenced this, that an inspector acting in good faith could issue a K order under these circumstances if it were later vacated. And that doesn't make sense for a few reasons. The commission's holding is essentially that MSHA doesn't have authority to issue a K order at the outset of an accident unless information becomes available later that suggests that there was, you know, that concludes that an accident occurred. And this is a significant limitation on MSHA's plenary power under 103K. And, you know, I think I may have made this point earlier, but vacature implies that the order was erroneously issued and that the inspector should have done something differently. But I think that all parties agree. Oh, I apologize. I see that I think I may be over my time. You want to finish your sentence? Yes, thank you. Vacature implies that the inspector should have done something differently, but I think all the parties agree that the inspector acted correctly here. And finally, the fact that the commission would allow an inspector to issue a K order as long as he later vacates it suggests that the agency would be required to engage in unlawful action repeatedly and then erase it somehow. And that doesn't make sense. So understand or provide me with an understanding of what happens if we dismiss this case as moot and the discussion that Judge Randolph was having with you, we would vacate. I don't know. I don't want to put this in the word judge in the judge's mouth, but what would happen to the commission decision? What would happen to the ALJ decision? And where does the mine operator stand? So the commission decision would be dismissed for lack of or sorry, would be, you know, would be reversed and dismissed for lack of jurisdiction. And that would happen to the ALJ decision as well. And then. So they're both on the books. Yes. So if the mine operator in the future is subject to a 104 enforcement action, this history is relevant. Well, the terminated K order would be on the books, but that isn't the terminated K order wouldn't have an effect on any enforcement under 104. You know, it wouldn't contribute to any penalties. It wouldn't be taken into account. It's just because it's terminated. There's a record that it occurred and then was terminated. That's the only consequence. And that's, I think how it would, how it would stand once the, once the. Oh, so the operator doesn't get the record cleared. No. Unless we vacate the 103 K order. Yes. Thank you. Thank you. Thank you. Anything further? Council? No, thank you, Judge. All right, we'll take the case under advisory. Thank you. Thanks.
judges: Henderson, Rogers, Randolph